## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HUMAN DYNAMICS AND DIAGNOSTICS, LLC, an Idaho limited liability company, | Case No. 4:21-cv-00483-BLW |
| | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff/Counter-Defendant, | |
| v. | |
| SARAH HERNANDEZ, an individual, | |
| Defendant/Counterclaimant/ Third-Party Plaintiff, | |
| v. | |
| PHILIP GIRLING, MD, an individual, | |
| Third-Party Defendant. | |

## INTRODUCTION

This case began when Plaintiff/Counter-Defendant Human Dynamics and Diagnostics (HDD) sued Defendant/Counterclaimant/Third-Party Plaintiff Sarah Hernandez in state court. *Notice of Removal*, Dkt. 1. Ms. Hernandez filed a counterclaim, which Human Dynamics removed to federal court. *Id.* Now, HDD moves to dismiss all of Ms. Hernandez's counterclaims for failure to state a claim.

**MEMORANDUM DECISION AND ORDER - 1**

Fed. R. Civ. P. 12(b)(6). Dkt. 5; Dkt. 12. For the reasons explained below, the Court will partially grant and partially deny the motion.

## BACKGROUND[1]

HDD provides mental health care services such as counseling, substance abuse counseling, trauma therapy, and developmental disability services. For several years, Ms. Hernandez worked for HDD and third-party defendant Dr. Philip Girling managed the organization.

Ms. Hernandez initially provided substance abuse counseling as an unlicensed master social worker. After a few years, she began managing the substance abuse program. Although Dr. Girling agreed to pay Ms. Hernandez a percentage of the revenue generated from the substance abuse program, he failed to follow through, and she relinquished her managerial role.

Around the same time, Ms. Hernandez became a licensed clinical social worker. HDD increased her compensation and Dr. Girling proposed Ms. Hernandez work as an independent contractor rather than an employee. In October 2018, Ms. Hernandez signed an independent contractor agreement with HDD. However, Ms. Hernandez alleges that "the substantive terms and conditions of her

---

[1] As is appropriate for this case's procedural posture, the background reflects only the facts as they are set out in Ms. Hernandez's amended counterclaim. Dkt. 10.

relationship with HDD remained unchanged and she continued to be treated in all respects as an employee, except that her income was now reported on a Form 1099 instead of a Form W2." *Id.* at 7. Ms. Hernandez signed similar agreements in 2019 and 2020.

According to Ms. Hernandez, in the months following the execution of the 2020 agreement, Dr. Girling instructed the HDD receptionist to stop providing new clients to her. As her reimbursement rate was tied to the number of patients she saw, Ms. Hernandez maintains that Dr. Girling's instruction undermined her ability to grow her practice and restricted or reduced her potential compensation. Additionally, Ms. Hernandez says that Dr. Girling verbally intimidated her and other women, but not their male counterparts. In March 2021, Ms. Hernandez resigned—citing Dr. Girling's treatment and his interference with her patient volume.

## LEGAL STANDARD

A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at

556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557 (quotation omitted).

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted).

## ANALYSIS

In her amended counterclaim, Ms. Hernandez brings nine claims. The Court will address the sufficiency of each.

### A.    Ms. Hernandez's claim for declaratory relief is sufficiently pleaded.

In her first claim, Ms. Hernandez asks the Court to declare that she was an employee of HDD from 2014 until her resignation in 2021. Idaho law provides that "[a]ny person interested under a . . . written contract . . . may . . . obtain a declaration of rights, status or other legal relations thereunder," Idaho Code § 10-

1201, so long as the case presents an actual or justiciable controversy. *Schneider v. Howe*, 133 P.3d 1232, 1237 (Idaho 2006). Both requirements are met here.

Ms. Hernandez has alleged facts that show she is a person interested under a written contract. Specifically, she claims that she and HDD signed independent contractor contracts in 2018, 2019, and 2020. *Amended Counterclaim*, Dkt. 10 at 6-7. That satisfies Idaho's the declaratory judgement statute.

Ms. Hernandez has also alleged facts that show that she and HDD have a justiciable controversy. Ms. Hernandez and HDD dispute the nature of their legal relationship—specifically, whether Ms. Hernandez was an employee or an independent contractor from October 2018 until her resignation. Under Idaho law, the test for determining whether a worker meets the statutory definitions of employee[2] or independent contractor[3] is one of control. A court must determine "whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely

---

[2] Idaho Code § 72-102(12) defines "employee" as "synonymous with 'workman' and means any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer."

[3] Idaho Code §72-102(17) defines an "independent contractor" as "any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

**MEMORANDUM DECISION AND ORDER - 5**

to require certain definite results." *State ex rel Indus. Comm'n v. Sky Down Skydiving, LLC*, 462 P.3d 92, 99 (Idaho 2020). A four-factor balancing test determines whether the "right to control" exists: (1) direct evidence of the right to control the employee; (2) the method of payment, including whether the employer withholds taxes; (3) whether the employer or worker furnishes "major items of equipment"; and (4) whether there is a right to terminate the employment at will and without liability. *Id.* (quoting *Hernandez v. Triple Ell Transp., Inc.*, 175 P.3d 199, 202 (Idaho 2007)). Ms. Hernandez maintains that despite the independent contractor agreements, the nature of her employment did not change aside from reporting her income on a 1099 tax form. *Amended Counterclaim*, Dkt. 10 at 6-7. Taking that fact as true for purposes of this motion, the Court can draw a reasonable inference that Ms. Hernandez remained an employee because HDD retained control over Ms. Hernandez's work.  Therefore, the claim has facial plausibility and Ms. Hernandez has adequately pleaded her claim for declaratory relief.

   **B.    Ms. Hernandez's claim for an accounting is sufficiently pleaded.**

   Ms. Hernandez requests an accounting to ascertain compensation due to her under her agreements with HDD. The goal of an accounting is to ascertain a party's interest in property and to determine the value of the party's interest. *Cox v.*

*Cox*, 71 P.3d 1028, 1032 (Idaho 2003). When two parties are unable to settle their joint financial affairs, an accounting is an appropriate remedy. *Id.*

Ms. Hernandez employment or independent contractor status with HDD constitutes a joint financial affair. Ms. Hernandez alleges that HDD both underpaid and withheld compensation from her. *Amended Counterclaim*, Dkt. 10 at 8-9. She states that she is unable to ascertain the extent or amounts of these unpaid wages because HDD is in possession of the requisite documents. *Id.* at 9-10. The resulting lawsuit shows that the parties have not been able to settle this joint financial affair. When these facts are taken as true, there is a reasonable inference that an accounting is an appropriate remedy. HDD's arguments that she has not stated a claim—"because her damages claim is rooted in her other causes of action; because those other causes of action would provide 'full justice'; and because the discovery process is the appropriate means for securing information"—hold no water under the 12(b)(6) standard. Ms. Hernandez has adequately pleaded her claim for accounting.

### C.   Ms. Hernandez's claim for breach of contract is sufficiently pleaded.

Ms. Hernandez argues that she has alleged facts to support a claim for breach of contract by constructive discharge. In Idaho, a plaintiff can bring a breach of employment contract claim against a private employer by establishing

constructive discharge. *O'Dell v. Basabe*, 810 P.2d 1082, 1103 (Idaho 1991); *Crafton v. Blaine Larsen Farms, Inc.*, No. 04-cv-383-BLW, 2006 U.S. Dist. LEXIS 17383, at *3 (D. Idaho Feb. 13, 2006). Constructive discharge is established if the employer engages in "harassment, intimidation, coercion or other aggravating conduct that renders working conditions intolerable." *O'Dell,* 810 P.2d at 1103; *Knee v. Sch. Dist. No. 139,* 676 P.2d 727, 730 (Idaho Ct. App. 1984). Contrary to HDD's contentions, the express terms of the employment contract do not need to prohibit "creating a work environment that is so hostile that the employee is compelled to quit" for that conduct to be a breach. *Crafton*, 2006 U.S. Dist. LEXIS 17383, at *4.

Ms. Hernandez alleges aggravating conduct rendering her working conditions intolerable. Specifically, she says that HDD stopped providing her new clients, which undermined her ability to grow her practice and reduced her compensation through both volume and reimbursement rate interference. *Amended Counterclaim*, Dkt. 10 at 8. Taken as true, those facts are sufficient to support a finding of breach of employment contract by constructive discharge.

### D.    Ms. Hernandez's claim for breach of the duty of good faith and fair dealing is sufficiently pleaded.

Ms. Hernandez alleges that her independent contractor agreements with HDD are subject to the implied covenant of good faith and fair dealing. *Amended*

*Counterclaim*, Dkt. 10 at 10. She states that HDD breached its duty of good faith and fair dealing by: (1) interfering with the volume of patients she treated; (2) interfering with her reimbursement rate; and (3) exercising control over her as if she were an employee even though the contract characterized her as an independent contractor. *Id.* at 11.

A covenant of good faith and fair dealing is implied in all employment agreements, including at-will employment relationships. *Knudsen v. J.R. Simplot Co.*, 483 P.3d 313, 327 (Idaho 2021) (citing *Van v. Portneuf Med. Ctr.*, 212 P.3d 982, 992 (2009)). This covenant mandates that the parties to an employment agreement perform the obligations of that agreement in good faith, "and a violation occurs when either party violates, qualifies, or significantly impairs any benefit or right of the other party under the contract." *Id.* However, the implied covenant of good faith and fair dealing does not apply to independent contractors under Idaho law. *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.*, 851 P.2d 946, 949 (Idaho 1993).

Ms. Hernandez has plead her claim for breach of good faith and fair dealing satisfactorily. She alleges that HDD exercised the type of control that made her an employee. *Amended Counterclaim*, Dkt. 10 at 10. *See also supra* Part A. She alleges specific facts that, taken as true, evidence HDD's significant impairment of

her benefit under the agreement, such as Dr. Girling's alleged instruction to the receptionist to stop providing clients to Ms. Hernandez, which undermined Ms. Hernandez's compensation.

### E. Ms. Hernandez's claims for quantum meruit and unjust enrichment are sufficiently pleaded.

In counts seven and eight, Ms. Hernandez alleges claims of quantum meruit and unjust enrichment. She brings these claims based on her allegation that after she resigned, Dr. Girling had HDD "withhold compensation earned by Sarah for patient encounters performed by her prior to her involuntary resignation . . . ." *Amended Complaint*, Dkt. 10 at 8.

Quantum meruit relief is appropriate under a contract implied-in-fact when there is no express agreement between parties but their conduct evidences an agreement. *Turcott v. Est. of Bates*, 443 P.3d 197, 203 (Idaho 2019). Similarly, unjust enrichment is the measure of recovery under a contract implied-in-law, which "is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent of the agreement of the parties, and, in some cases, in spite of an agreement between the parties." *Id*. HDD argues that Ms. Hernandez's claims should be dismissed "because the parties agree that there was a contract between them." *Reply*, Dkt. 7 at 7. The Court disagrees.

**MEMORANDUM DECISION AND ORDER - 10**

Ms. Hernandez alleges the existence of a contract, but she may plead claims in the alternative. Fed. R. Civ. P. 8 ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Ms. Hernandez appropriate makes these claims under an implied contract theory—that despite the independent contractor agreements, that conduct between the parties created an implied employee relationship. Accordingly, the claims may proceed.

## F.    Ms. Hernandez's FLSA claim is not sufficiently plead.

Ms. Hernandez alleges that HDD failed to pay her overtime wages in violation of 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act. To bring this claim under the FLSA, a plaintiff "must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commun., Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014), as amended (Jan. 26, 2015). The pleading of detailed facts is not required as the plausibility of a claim is "context-specific." *Id.* at 645. A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period, the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility. *Id.* Pleading more specific facts moves the complaint closer toward plausibility. *Id.* However, a plaintiff is not required to

make an approximation of overtime hours to reach plausibility. *Id.* Courts recognize that the detailed information concerning a plaintiff-employee's compensation and schedule is likely in the control of the employer-defendant. *Id.*

Ms. Hernandez states that she was "routinely required by HDD and Girling, to be present in the workplace in excess of forty hours per week." *Counterclaim*, 66. She also provides the rate of her compensation. *Id.* at 60. This falls short of providing enough facts to survive a motion to dismiss. Although she does not need to allege a single particular workweek in which she worked overtime or the alleged amount of overtime she is owed, Ms. Hernandez does not provide any information about when she worked overtime, how occasionally it occurred, or the nature of the alleged requirements that she work overtime. The Court recognizes Ms. Hernandez's informational disadvantage as HDD is in possession of Ms. Hernandez's compensation records. But to state a claim for relief, Ms. Hernandez must provide more detail about the length and frequency of her unpaid work.

"Dismissal of a complaint without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020). Here, Ms. Hernandez has clearly shown the possibility of curing the deficiencies in her FLSA claim through amendment, so the claim will be dismissed with leave to amend.

**G.     Ms. Hernandez's claim for unpaid wages is not sufficiently plead.**

Ms. Hernandez alleges that HDD failed to pay her wages in violation of Idaho Code § 45-606. Under this statute, "upon termination of employment by either the employer or employee, the employer shall pay or make available . . . all wages then due the employee by the earlier of the next regularly scheduled payday or within ten (10) days of such . . . termination." Idaho Code § 45-606. Ms. Hernandez simply alleges that, "[u]pon her resignation, Girling caused HDD to withhold compensation earned by Sarah for patient encounters performed by her prior to her involuntary resignation and that compensation remains unpaid." *Amended Counterclaim*, Dkt. 10 at 8. In her brief, Ms. Hernandez further explains that the alleged withheld wages are "her final wages," presumably meaning those she would have received in her next paycheck. *Response*, Dkt. 6 at 14. But that information is not included in her amended complaint. Rather, she merely states that HDD "withheld compensation"—a recitation of the element of the cause of action and not enough to state a claim for relief. But, because Ms. Hernandez has again shown the possibility of curing the deficiencies in her claim through amendment, the unpaid wages claim will be dismissed with leave to amend. *Parents for Privacy*, 949 F.3d at 1221.

**H.     Ms. Hernandez's claims for gender discrimination and harassment are sufficiently plead.**

Ms. Hernandez's ninth claim is titled "gender discrimination/harassment." *Amended Complaint,* Dkt. 10 at 15. HDD erroneously argues that the Court should apply the *McDonnell Douglas* framework and dismiss this claim unless Ms. Hernandez can establish a prima facie case for gender discrimination under Title VII. *Motion*, Dkt. 12 at 2-3 (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)). But the Ninth Circuit has squarely rejected that argument. *See Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019) ("We read the Second Circuit's application of the *McDonnell Douglas* presumption at the pleading stage as contrary to Supreme Court precedent, and we decline to embrace that approach."). Ms. Hernandez's complaint does not need to track every element of a prima facie case, but must include "sufficient, nonconclusory allegations plausibly linking the [adverse] action to discrimination." *Id.* at 1136-38.[4] Ms. Hernandez meets that standard. She alleges that because of her gender,

---

[4] The Ninth Circuit's unpublished decision in *Tatyana Evgenievna Drevaleva v. Dep't of Veterans Affairs*, 835 F. App'x 221, 223 (9th Cir. 2020) further illustrates this standard. In that case, the district court dismissed the plaintiff's Title VII discrimination claim because she "failed to allege facts sufficient to establish a prima facie case of sex discrimination on the basis of her fertility issues." The Ninth Circuit reversed. The Circuit reiterated that "Federal Rule of Civil Procedure 8(a), not the *McDonnell Douglas* framework, provides the appropriate pleading standard for reviewing a Rule 12(b)(6) motion in an employment discrimination action." *Id.* (citing *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136-37 (9th Cir. 2019)). The Circuit explained that the plaintiff's allegations of gender discrimination—that "her supervisors fraudulently (Continued)

Dr. Girling took steps to discontinue providing her with new clients and created an "intimidating, hostile, and offensive work environment" through verbal intimidation and harassment. *Amended Complaint*, Dkt. 10 at 16-17. That is sufficient to prevail against a 12(b)(6) motion to dismiss.

## ORDER

**IT IS ORDERED that:**

1.     Defendant's motion to dismiss (Dkt. 5) is GRANTED IN PART and DENIED IN PART.

    a.     Claims Five and Six of Plaintiff's Amended Counterclaim (Dkt. 10) are dismissed with leave to amend. If Ms. Hernandez wishes to file a second amended complaint, she must do so within 14 days of this order.

    b.     The motion is denied in all other respects.

2.     Defendant's supplemental motion to dismiss (Dkt. 12) is DENIED.

---

concealed available leave options when she requested time off to travel to Russia to continue her in vitro fertilization procedures in Russia, imposed additional requirements on her application for leave without pay that were inconsistent with the agency's policies, and failed to provide a full explanation of the reason for her leave to the medical staff responsible for approving the leave request"—were sufficient to survive a 12(b)(6) motion to dismiss.

**MEMORANDUM DECISION AND ORDER - 15**

DATED: September 29, 2022

B. Lynn Winmill
U.S. District Court Judge